## A01A0034. WALLS v. KIM.
### (549 SE2d 797)

JOHNSON, Presiding Judge.

In our judicial system, the only purpose for voir dire is to assure that jurors are impartial — that they are able to consider the case solely on its merits without any bias or prior inclination.[1] A party in a civil case therefore has good cause to challenge a juror who has expressed either an opinion that the opposing party ought to prevail or a desire that the other party will succeed.[2] Upon such a challenge, the trial court must consider the evidence and then exercise its significant discretion to retain or dismiss the juror.[3]

In too many cases, trial courts confronted with clearly biased and partial jurors use their significant discretion to "rehabilitate" these jurors by asking a version of this loaded question: After you hear the evidence and my charge on the law, and considering the oath you take as jurors, can you set aside your preconceptions and decide this case solely on the evidence and the law? Not so remarkably, jurors confronted with this question from the bench almost inevitably say, "yes." Such biased jurors likely even believe that they can set aside their preconceptions and inclinations — certainly every reasonable person wants to believe he or she is capable of doing so. Once jurors affirmatively answer the "rehabilitation" question, judges usually decide to retain these purportedly rehabilitated jurors, and on appeal such decisions are often found not to be abuses of discretion.[4]

Many judges on this court have served as trial judges and wholeheartedly agree with the principle that trial judges must have significant discretion in deciding whether to excuse jurors for cause. Just as wholeheartedly, we disagree with the way that the "rehabilitation" question has become something of a talisman relied upon by trial and appellate judges to justify retaining biased jurors. Especially when

---

[1] *Daniel v. Bi-Lo*, 178 Ga. App. 849, 851 (1) (344 SE2d 707) (1986).
[2] OCGA § 15-12-134.
[3] *Cohen v. Baxter*, 267 Ga. 422, 423 (1) (479 SE2d 746) (1997).
[4] See id.; *Switzer v. Gorman*, 235 Ga. App. 794, 795 (1) (510 SE2d 581) (1998).

the better practice is for judges simply to use their discretion to remove such partial jurors, even when the question of a particular juror's impartiality is a very close call.

A trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors because, in reality, the judge is the only person in a courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury. While the parties to litigation operate under the guise of selecting an impartial jury, the truth is that having a jury which is truly fair and impartial is not their primary desire. Instead, their goal is to select a jury which, because of background or experience or whatever other reason, is inclined to favor their particular side of the case. The trial judge, in seeking to balance the parties' competing interests, must be guided not only by the need for an impartial jury, but also by the principle that no party to any case has a right to have any particular person on their jury.[5]

The case before us is an example of how a trial court, however unintentionally, abuses its discretion in refusing to dismiss a juror who is biased in favor of one party. Patricia Walls, who was 45 years old, went to the emergency room of Phoebe Putney Memorial Hospital in Albany because of a cramp in her left calf and shortness of breath. She was seen by Dr. Tae Won Kim, who ordered that she undergo a chest x-ray, a doppler of the left leg, and blood work. After undergoing those examinations, she returned home. A week later, Walls died of a pulmonary thromboembolism.

Her husband, Ed Walls, brought the instant wrongful death action against Dr. Kim. The doctor answered the complaint, and the case proceeded to trial. During voir dire, one of the jurors stated that she is a nurse who works in emergency rooms, that she knows Dr. Kim, and that she has worked with him. Because of that relationship, she said that she probably hoped that the case would come out in favor of Dr. Kim, and she acknowledged that Ed Walls did not start the case on an even footing with the doctor.

The judge then asked the "rehabilitation" question, to which the juror replied that she would set aside her preconceived notions and decide the case on the law and evidence. Upon further questioning by Walls' counsel, the juror reiterated that Walls did not start the case on an even footing with Dr. Kim because she knows and has worked with the doctor, but she does not know Walls. However, she then contradicted herself by claiming that she did not favor one side over the other. When Walls' counsel tried to ask her to explain the contradiction, the judge cut him off and ordered him to move on to another

---

[5] See *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633, 636 (224 SE2d 739) (1976).

question. Thereafter, the judge refused to disqualify the juror for cause.

A juror is objectionable when it is shown that her finding in the case may be affected by personal interest in the result; and the probability as to whether that interest will produce bias is determined by ordinary and general human experience.[6] In the current case, the juror had a personal interest in the result due to her professional relationship with Dr. Kim; and based on ordinary and general human experience, it is more than probable that her interest produced bias.

If this nurse served on the jury, she would have only two choices — either a verdict for Dr. Kim or a verdict against him. After that verdict, she would have to go back to the emergency room in the hospital where she and Dr. Kim both have worked, face the doctor, work with other physicians and nurses on that hospital staff, many of whom undoubtedly know Dr. Kim, and deal with hospital administrators who had employed them both. She may even work again with Dr. Kim in circumstances where emergency treatment is performed on another patient. Common sense and human experience tell us that anyone in this nurse's position would be reluctant to return a verdict against the doctor, no matter how great her belief that she could set aside her personal feelings. And she admitted as much to the court, saying that she hoped the case would work out in favor of the doctor and that to her Walls did not start the case on equal footing with the doctor.

The mere fact that she also told the court that she could decide the case on the law and facts does not eliminate the reality of her circumstances. She still hoped the case would work out for Dr. Kim, and she still had to go back to work after the case. She was, understandably, a biased juror who should not have remained in the jury pool. Neither the juror nor the parties should be put into such a situation. In refusing to dismiss her for cause, the trial judge abused his discretion. Therefore, the judgment must be reversed and the case remanded for a new trial.

*Judgment reversed. Pope, P. J., Smith, P. J., Barnes, Ellington and Phipps, JJ., concur. Ruffin, J., dissents.*

RUFFIN, Judge, dissenting.

I concur with almost all of the majority opinion, except for the result. Were it not for *Cohen v. Baxter*,[7] I would concur fully. However, pretermitting what I, as a former trial judge, may believe to be "the better practice," as an appellate judge, I must follow different

---

[6] *Daniel*, supra at 850 (1).
[7] 267 Ga. 422 (479 SE2d 746) (1997).

rules. One such rule is that of stare decisis. Indeed, this principle serves as the bedrock of our common law system. I recognize that stare decisis is commendable where appropriate and that it serves a useful purpose in our jurisprudence. Moreover, I recognize that we should not become prisoners of precedent and that stare decisis should be a guide, not a goal. However, while we may be free to jettison stare decisis in our own precedent, we do not enjoy the luxury of such license with precedent established by our Supreme Court. Here, I firmly believe that the majority has ignored controlling Supreme Court precedent in deciding this case.[8] Accordingly, I must respectfully dissent.

In order to understand why this case is controlled by Supreme Court precedent, one first must look to what actually transpired during voir dire. After one of the jurors informed the court that she worked as a nurse at the same hospital where Dr. Kim worked, the following exchange then occurred between Walls' attorney and the prospective juror:

Q: And you know Dr. Kim; is that correct?
A: Yes, sir.
Q: Have you, in your work at [the hospital], had occasion to work in the emergency center with the doctors?
A: Yes, sir.
Q: Given that experience with the emergency center doctors at [the hospital] and the fact that this is a case arising out of an emergency center visit by Patricia Walls, the deceased, without knowing anything about the case, because of your working at [the hospital] and knowing Dr. Kim, as you sit here now knowing nothing about the case, would you be leaning to [the hospital] side or the Dr. Kim side simply because of your work experience?

At this point, the defense attorney objected to the question as the hospital was not a party to the case, and the plaintiff's attorney rephrased the question.

Q: Given your relationship with Dr. Kim, would you, knowing nothing about the case, hope that things came out Dr. Kim's way?
A: Probably.
Q: So, as you sit here now, representing [sic] the plaintiff, who you don't know, against a doctor that you do know, we

---

[8] Indeed, although the majority cites *Cohen v. Baxter* for general principles of law, it does not discuss how this case differs from *Cohen*.

don't start off with the scales equally balanced because of your professional relationship with Dr. Kim. Is that a fair statement?
A: That's a fair statement.

Walls' attorney then moved to strike the juror for cause. Prior to ruling on the motion, the trial court asked the juror whether she would be able to put aside her personal feelings and base her decision upon the evidence as presented and the law as given. The juror responded affirmatively, and the plaintiff's attorney continued asking questions.

Q: [I]s it fair to say that representing the plaintiff, which I do, you have already candidly stated we don't start off even with the defendant; is that correct?
A: Yes, sir.
Q: I've got to come up to even and then go above that to convince you; correct?
A: I don't think so.
Q: Well, you said we don't start off even.
A: It's only because I know Dr. Kim; I mean, I've worked with him, met him. I've never met the defendant [sic].
Q: But as you sit here today, you favor one side over the other without having heard anything about the evidence; is that correct?
A: No, sir.

At this point, the trial court instructed the plaintiff's attorney to "proceed with another question, and the attorney began asking questions of another juror." The trial court declined to excuse the nurse for cause, and this appeal ensued.[9]

The law presumes that potential jurors are both fair and impartial, and Walls bears the burden of rebutting that presumption.[10] "A juror is not disqualified if he or she can lay aside whatever opinions or impressions he or she may have had and decide the case based upon the evidence presented in court."[11] It is axiomatic that the decision of whether to strike a juror for cause lies within the sound discretion of the trial court.[12] On appeal, we should not disturb that dis-

---

[9] The portion of the transcript provided does not contain an actual ruling on Walls' motion, but both parties concede that the trial court did not strike the juror for cause.

[10] See *Stewart v. Stewart*, 240 Ga. App. 573, 577 (3) (524 SE2d 267) (1999).

[11] (Punctuation omitted.) *Hardy v. Tanner Med. Center*, 231 Ga. App. 254, 256 (4) (499 SE2d 121) (1998).

[12] See *Stewart*, supra; *Smith v. Folger*, 237 Ga. App. 888, 889 (2) (517 SE2d 360) (1999); *Hardy*, supra at 256-257 (4), (5); *Luke v. Suber*, 217 Ga. App. 84, 85-86 (1) (456 SE2d 598) (1995).

cretion unless this Court finds that it has been manifestly abused.[13] Here, the majority finds manifest abuse of discretion in the trial court's failure to excuse a juror, which it characterizes as "clearly biased and partial."

Initially, I note that the record does not bear out this characterization of the juror, who unequivocally stated that she would decide the case solely based upon the evidence and the law as given by the judge. Evidently, the majority is troubled by the fact that the juror — a nurse — worked in the same hospital as the defendant — a doctor. According to the majority, the juror "had a personal interest in the result [of the case] due to her professional relationship with the defendant doctor; and based on ordinary and general human experience, it is more than probable that her interest produced bias." Thus, having summarily dismissed the juror's sworn statement that she could decide the case based upon the evidence, the majority advocates creating a rule excluding all such jurors as "understandably" biased.

While it is almost certainly true that many potential jurors enter the jury pool with certain biases, that does not justify creating per se rules excluding broad classes of jurors, such as co-workers. In *Cohen v. Baxter*,[14] the Supreme Court addressed this *very issue* in the context of potential jurors who were patients of a doctor who was the defendant. The Supreme Court concluded that

> the reality [is] that the trial judge is in the best position to judge the credibility of the juror and, therefore, trial courts have traditionally had significant discretion to retain or dismiss a juror. The fact that the doctor-patient relationship exists between a juror and a defendant does not justify removing this discretion from the trial courts. Trial courts are often faced with jurors who have close relationships with parties in both civil and criminal cases. We have confidence that trial courts can ascertain whether a juror is partial because of a doctor-patient relationship with a defendant just as well as the trial court can determine bias arising from other sources. A per se rule cuts too broadly and is inconsistent with the traditional discretion given trial courts in this area. Furthermore, there are various close and confidential relationships that a juror may have with a party and the establishment of a per se rule to the doctor-patient relationship will open the door to the expansion of the per se rule to these other numerous categories. Finally, a per se

---

[13] See *Stewart*, supra.
[14] Supra at 423 (1).

rule may render it extremely difficult to obtain a full panel for a medical malpractice trial in some rural counties.[15]

The same reasoning applies here. Indeed, in terms of creating a per se rule, the argument in *Cohen* was far more compelling. Patients place their very lives in the hands of their doctors. Given this tremendous degree of trust, I certainly understand why patients of defendant doctors might be considered "understandably biased." Here, however, the potential juror and defendant doctor merely worked at the same facility. There is no suggestion that the prospective juror was a subordinate of the doctor.[16] Where a prospective juror is a mere co-worker, I fail to see how the majority can justify creating a per se rule excluding all such jurors. More importantly, I believe the Supreme Court's opinion in *Cohen* bars this Court from creating such a rule. Where, as here, we are guided by clear Supreme Court precedent, we are bound to follow it, irrespective of whether we agree with that Court.[17] Accordingly, I dissent.

DECIDED JUNE 4, 2001 —
RECONSIDERATION DENIED JUNE 29, 2001 — ▓▓▓▓▓▓▓

*Del Percilla, Jr., Billy C. Mathis, Jr., Thomas W. Malone*, for appellant.

*McCall, Finney & Phillips, W. Earl McCall, Paul G. Phillips*, for appellee.

*Butler, Wooten, Scherffius, Fryhofer, Daugherty & Sullivan, James E. Butler, Jr., Joel O. Wooten, Jr., Conley, Sacks & Griggs, Richard A. Griggs*, amici curiae.

---

[15] (Footnote omitted.) Id.

[16] See *Page v. Janko*, 200 Ga. App. 547, 548 (1) (409 SE2d 48) (1991) (" 'This is *not* a case wherein the prospective (juror was an employee) of appellant or any other *party* to the case.' ") (emphasis in original).

[17] See *Eady v. Capitol Indem. Corp.*, 232 Ga. App. 711, 714 (502 SE2d 514) (1998).