## A09A0686. GARDUNO v. THE STATE.
### (682 SE2d 145)

PHIPPS, Judge.
A jury found Fragoso Victor Garduno guilty of one count of aggravated child molestation and five counts of child molestation. Garduno appeals, arguing that the trial court erred in failing to excuse a prospective juror for cause. We agree and reverse.

1. Viewed favorably to the jury's verdicts,[1] the evidence shows that Garduno was married to the nine-year-old victim's sister. The victim, H. A., testified that Garduno inserted his penis into her vagina and bottom on more than one occasion. He also touched her vagina, bottom, and breasts with his hands, her breasts with his tongue, and, while in her presence, touched his own penis with his hands. H. A. made similar allegations to the detective who investigated the case, describing sexual acts performed by Garduno and stating that Garduno "would shake" or "choke" his penis in her presence. A medical examination of H. A.'s anus revealed trauma consistent with recent penetration. And H. A.'s 13-year-old brother testified that he caught Garduno unzipping his pants near H. A., who was on her hands and knees on the floor, naked from the waist down.

Given H. A.'s testimony, as well as the other medical and

---

[13] *Lemming v. State*, 292 Ga. App. 138, 141 (1) (663 SE2d 375) (2008) (citations and punctuation omitted).

[14] See *Phillips*, supra.

[1] See *Brown v. State*, 295 Ga. App. 542 (672 SE2d 514) (2009).

testimonial evidence, the jury was authorized to find Garduno guilty of each count of aggravated child molestation and child molestation charged in the indictment.[2] Accordingly, the evidence was sufficient to sustain the verdicts.[3]

2. Nevertheless, we must reverse Garduno's convictions because the trial court erred in denying his motion to strike a prospective juror for cause.[4] The record shows that at the time of trial, the juror was employed as an elementary school teacher. Prior to her teaching career, she worked for ten years with the Department of Family and Children Services. In that capacity, she investigated child abuse cases and interviewed child molestation victims.

After establishing the juror's work history, the prosecuting attorney conducted the following inquiry:

> (Q) Okay; do you think that you could be fair and impartial in this case? . . . (A) I don't know. (Q) What is your hesitation? (A) Because of my training we were always taught to believe the victim is telling the truth. . . . (Q) To err on the side of making sure the child was safe? (A) That's right. (Q) Did you ever have an occasion to decide through your investigation that the child maybe wasn't telling the truth? (A) Yes. (Q) So even though your training was that you were taught that the child should always be believed, if evidence came to you that the child shouldn't be believed, you weren't just going to ignore that? (A) That's correct.

The prosecutor questioned the juror further about her ability to be fair and impartial:

> (Q) [T]he evidence in this case comes from the witness stand. And part of the reason we ask you these questions is, you are able to judge credibility or, you know, either way, whether, you know, you think a person is credible, whatever witness it is. The judge will give you the law to apply, and he'll tell you about credibility of witnesses. And the question, in getting a fair and impartial juror, is: Can you listen to the evidence, apply the law that the judge gives you, and render a fair and impartial verdict, looking at all the evidence. (A) I believe I could.

---

[2] See OCGA § 16-6-4 (a) (defining child molestation), (c) (defining aggravated child molestation).

[3] See *Brown*, supra at 544.

[4] Because the evidence was sufficient, the case may be retried upon remand. See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

After the prosecutor addressed the juror, defense counsel explored her potential bias:

> (Q) [Y]ou explained that the way you were trained is to believe the child until there's evidence otherwise? (A) That's correct. (Q) So as we start the beginning of this trial in 2007, it's fair to say, the prosecution is going to call the alleged victim to the stand; it's fair to say that you start off believing that person, based on your training. (A) That would be true. (Q) And only after I present some evidence to you that it may not be true do you sort of switch; is that a fair statement? (A) That's fair.

The trial court has broad discretion in evaluating a prospective juror's impartiality, and its ruling on the matter will not be reversed absent manifest abuse of that discretion.[5] As we have noted, however,

> the potential impact of juror bias must not be underestimated. Running through the entire fabric of our Georgia decisions is a thread which plainly indicates that the broad general principle intended to be applied in every case is that each juror shall be so free from either prejudice or bias as to guarantee the inviolability of an impartial trial. If error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors.[6]

In this case, the juror candidly admitted that, based on her ten years of experience interviewing child abuse and molestation victims, she was biased toward the prosecution's key witness — the child victim. She questioned her ability to be fair and impartial. She then stated that Garduno would need to present evidence controverting the child's testimony to sway her opinion.

We recognize that the juror agreed, upon explicit questioning by the prosecutor, that child victims are not always truthful. She also indicated her belief that she could render an impartial verdict. But these types of talismanic questions and responses are not determinative.[7] "Indeed, jurors who have expressed a bias may well mistakenly believe they can set aside their preconceptions and inclinations — certainly every reasonable person wants to believe he or she is

---

[5] *Park v. State*, 260 Ga. App. 879, 880 (1) (581 SE2d 393) (2003).

[6] Id. at 880-881 (1) (citation omitted).

[7] See id. at 881.

capable of doing so."[8] Moreover, after answering the prosecutor's inquiries, the juror again revealed a bias toward the child victim and stated that Garduno could not overcome that bias unless he submitted contrary evidence. Under these circumstances, the prosecutor's questioning did not rehabilitate the juror, and the trial court manifestly abused its discretion in refusing to strike her for cause.[9]

*Judgment reversed. Smith, P. J., and Bernes, J., concur.*

DECIDED JULY 13, 2009.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, Dawn H. Taylor, Assistant District Attorney*, for appellee.

---

[8] Id. (citation and punctuation omitted). See also OCGA § 15-12-164 (d) ("The juror's own representation that the juror would be fair and impartial is to be considered by the court but is not determinative.").

[9] See *Valentine v. State*, 265 Ga. App. 139, 140-141 (2) (592 SE2d 918) (2004) (trial court erred in refusing to strike juror who stated that her prior relationship with victim's mother would affect her ability to be fair and impartial; although juror later asserted that she believed she could be fair, the trial court failed to sufficiently question the juror to determine her bias); *Park*, supra at 881 (trial court abused its discretion in refusing to strike juror who, based on prior work experience, was biased against defendant and presumed him guilty; juror was not rehabilitated by assertion, during questioning by the trial court, that he could apply the presumption of innocence and decide the case based on the evidence presented); *Bowens v. State*, 116 Ga. App. 577, 579 (5) (158 SE2d 420) (1967) (trial court erred in failing to strike juror who stated that he would believe any police officer over an African-American defendant "unless the evidence should prove he was wrong as to his opinion").