## S12A0990. LEONARD v. THE STATE.

(735 SE2d 767)

HINES, Justice.

Brandon Leonard appeals his convictions and sentences for malice murder and possession of a firearm during the commission of a felony, all in connection with the shooting deaths of Thomas Darr and Jim Cates. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Darr drove his vehicle, with Cates seated in the front passenger seat, to a location on a street outside Leonard's apartment where Leonard was selling illegal drugs. Leonard approached the driver's side of the vehicle and engaged in a conversation with Darr that grew loud. Leonard produced a pistol, put it to the driver's window, and fired two shots. The vehicle left quickly, traveled to the end of the block, turned the corner, and crashed against a telephone pole. Darr was found dead in the driver's seat of his vehicle from a gunshot wound to the chest. Cates later died from complications of a gunshot wound to the back.

Leonard returned to his apartment after the shootings; he seemed angry and frustrated. When his roommate asked why he fired the shots, he said that the drugs he was selling the men had fallen inside the vehicle and he told the men not to "try to pull off on him." He said "that dude . . . is not going to run off on nobody else like that." Leonard's roommate later contacted the detective in charge of the investigation into the shootings. When police officers arrived to arrest Leonard, an object was thrown from the window of his apartment; it proved to be the .25 caliber pistol that fired the fatal shots. Leonard later tried to persuade his roommate to testify that Darr was trying to strike him with the vehicle.

---

[1] The crimes occurred on August 23, 2006. On October 12, 2007, a Fulton County grand jury indicted Leonard for two counts of malice murder, two counts of felony murder while in the commission of aggravated assault, two counts of felony murder while in the commission of possession of a firearm by a convicted felon, one count of felony murder while in the commission of aggravated battery, two counts of aggravated assault, one count of aggravated battery, two counts of possession of a firearm during the commission of a felony, and one count of possession of a firearm by a convicted felon. Leonard was tried before a jury November 18-21, 2008, and found guilty of all charges. On November 24, 2008, Leonard was sentenced to two concurrent terms of life in prison for the malice murders, and consecutive terms of five years each for the two counts of possession of a firearm during the commission of a felony; the remaining counts merged with the malice murders or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4), (5) (434 SE2d 479) (1993). Leonard moved for a new trial on November 25, 2008, and amended it on June 10, 2010; the motion was denied on July 11, 2011. Leonard filed a notice of appeal on August 8, 2011. His appeal was docketed in this Court for the April 2012 term, and submitted for decision on the briefs.

1. The evidence authorized the jury to find Leonard guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During an interview conducted while Leonard was in police custody, he told an investigating detective that: he was standing outside his apartment when Darr and Cates drove up and asked him to sell them crack cocaine for $50; he inquired if they had money; they responded that they did; he passed the cocaine to the interior of the vehicle; the two men began to drive off without paying for the drugs; he was afraid the vehicle would run over him; and he fired two shots from a pistol, trying to hit Darr's arm. Before trial, Leonard filed a motion to exclude this statement from evidence, which the trial court denied. He asserts that he made the statement while under the influence of the drug Ecstacy, and that his statement was induced by the hope of a light sentence. "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal. [Cit.]" (Citation and punctuation omitted.) *Pickren v. State*, 272 Ga. 421, 425 (5) (530 SE2d 464) (2000).

During the hearing on his motion, Leonard testified that the detective told him, before the recorded portion of the interview, that if he did not talk to the detective, he would get "50 years or better," but that "if you tell us what happened, we can help you out." However, the evidence offered at the hearing supported the trial court's rejection of that testimony; the detective involved testified that he had not made any such promise. Further, at the beginning of the recorded portion of the interview, Leonard read aloud, and signed, a statement declaring that no promise had been given to induce him to submit to the interview, a statement that the detective repeated before asking questions. Indeed, later in the interview, the detective stated that he could not promise Leonard "how long you going to go [sic]," and in summarizing its reasons for denying the motion, the trial court specifically noted that at this point in the interview, Leonard's demeanor was not that of one who believed he had previously been given a promise in exchange for giving the interview.

Although Leonard testified during the hearing that he had taken two pills of Ecstacy three or four hours before the interview, he admitted that he had not told the detective this during the interview. Again, the trial court was able to view Leonard's demeanor on the recording of the interview, and the court's determination that Leonard gave his statement freely and voluntarily is not clearly erroneous. See *Farris v. State*, 290 Ga. 323, 325-326 (2) (720 SE2d 604) (2012); *State v. Folsom*, 286 Ga. 105, 111 (4) (686 SE2d 239) (2009).

3. During voir dire of prospective jurors, Leonard sought to ask one prospective juror if she would weigh the testimony of a law enforcement officer more heavily, or consider the officer more truthful, because of that occupation, and cites as error the trial court's refusal to allow the question. "It is not error to refuse to allow defense counsel to ask whether a prospective juror would tend to believe or prefer the testimony of a police officer over other testimony." (Citation and punctuation omitted.) *Simmons v. State*, 282 Ga. 183, 187 (9) (646 SE2d 55) (2007). Leonard then asked whether the prospective juror would consider a witness to be more credible "based on their profession," and again, the court did not allow the question. To the extent that this was anything more than an attempt to ask the same question, "[t]he scope of voir dire is largely left to the trial court's discretion," *Barnes v. State*, 269 Ga. 345, 351-352 (10) (496 SE2d 674) (1998), and it is not an abuse of the trial court's discretion to forbid questioning that "improperly ask[s] the venire member to prejudge the credibility of the witnesses." *Bramble v. State*, 263 Ga. 745, 746 (2) (438 SE2d 619) (1994).

Another prospective juror's responses to questions indicated that, because of a family relationship in her .past, she had strong negative feelings about illegal drugs, and those who sell and use them. Leonard asked whether, if she were selected to serve, she would be able, despite those feelings, to "weigh all of the evidence and make a decision based on the evidence." The prospective juror responded: "Yes, but I would probably be prejudiced because of that particular experience, because that affected my daughter and it affected me." Upon questioning by the court whether her feelings would prevent her from objectively listening to the evidence, the prospective juror stated that she did not know "because I haven't been in the situation. I have no idea how I would react." She was then asked whether she had "any concerns . . . about giving either the State or the defendant a fair trial," and responded "no." She answered affirmatively when asked if she believed she could "give both sides a fair trial." On the question of whether she thought she could be a fair and impartial juror in a case involving allegations regarding illegal drugs in light of her experience, she responded: "Probably. I'm a very fair person. Yeah, I probably could." Leonard asserts that the trial court erred in denying his motion to strike this prospective juror for cause.

> For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.

*Corza v. State*, 273 Ga. 164, 166 (3) (539 SE2d 149) (2000). A trial court's determination as to whether to strike a juror for cause will not be set aside absent some manifest abuse of the court's discretion. *Shiver v. State*, 276 Ga. 624, 625 (2) (581 SE2d 254) (2003). "An appellate court must pay deference to the finding of the trial court and this deference includes the trial court's resolution of any equivocations or conflicts in the prospective juror's responses on voir dire. [Cit.]" *Nance v. State*, 280 Ga. 125, 128 (7) (623 SE2d 470) (2005). The fact that at some point during voir dire, a prospective juror expressed some doubt as to her own impartiality does not demand as a matter of law that she be excused for cause. See *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997). The prospective juror's responses do not show that she would be unable to properly serve as a juror, and there was no abuse of discretion in refusing to strike her for cause. *Corza*, supra.

4. Finally, Leonard contends that his trial counsel failed to provide effective representation. In order to prevail on this claim, Leonard must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Counsel did not seek to have the charge of possession of a firearm by a convicted felon tried separately from the other charges Leonard faced, and Leonard asserts that counsel was ineffective in this regard. But, " '(t)he possession charge was an underlying felony for [two] of the felony murder counts of the indictment, and therefore, bifurcation was not authorized. (Cit.)' [Cit.]" *Finley v. State*, 286 Ga. 47, 48 (2) (685 SE2d 258) (2009). That counsel did not pursue a meritless

motion cannot constitute a basis for a claim of ineffective assistance of counsel. *Lupoe v. State*, 284 Ga. 576, 580 (3) (f) (669 SE2d 133) (2008).

Leonard contends that counsel was ineffective in failing to secure a transcript of the interview during which Leonard gave a statement to a law enforcement officer. First, Leonard fails to establish that, indeed, counsel did not have such a transcript before the hearing on the motion to suppress; at the hearing on the motion for new trial, counsel testified that she had prepared for the motion by watching the video of the interview "a number of times," but could not remember whether she had a transcript, and Leonard presented no other evidence on the matter. Further, even if counsel's failure to acquire a transcript, together with her general preparation for the motion to suppress, can be considered deficient, Leonard fails to establish any prejudice; he presents no evidence or argument regarding what cross-examination of the law enforcement officer involved could have been conducted with the aid of a transcript that could not be conducted based on an examination of the video.

Finally, Leonard asserts that trial counsel was ineffective for failing to secure an expert witness to testify regarding the effect of the drug Ecstacy on his ability to make a voluntary statement. However, again, Leonard has not shown what, if any, effect such an expert might have had on the outcome of his trial, and fails to meet his burden under *Strickland*, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 27, 2012.

*Barbara M. Collins*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Paige Reese Whitaker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General*, for appellee.